McClendon, j.
|PAt issue is whether an insurance policy issued by Zurich American Insurance Company provided underinsured/unin-sured motorist (UM) coverage to Lloyd Hughes, who was driving a vehicle that was insured under the policy. Because we conclude that the policy did not provide UM coverage, we affirm the trial court’s judgment granting Zurich’s motion for summary judgment.
FACTS AND PROCEDURAL HISTORY
In January 2010, Mr. Hughes, an employee of Dupre Logistics, LLC, (Dupre), was injured when the truck he was driving was rear-ended by a vehicle driven by Robert M. Coleman. Mr. Hughes settled a claim with Coleman’s liability insurer for its policy limits. Thereafter, Mr. Hughes filed a petition for damages, naming Zurich as a defendant. Mr. Hughes alleged that Zurich provided his employer, Dupre, uninsured/underinsured motorist (UM) coverage for the truck he was driving at the time of the accident.
In February 2013, Zurich filed a motion for summary judgment, contending that it did not provide Dupre UM coverage on the vehicle driven by Mr. Hughes at the time of the accident. Specifically, Zurich provided affidavits, the insurance policy, and several UM selection forms in support of its assertions that it did provide trucker’s liability coverage to Dupre since October 2005,. but that Dupre had always rejected UM coverage.
In opposition, Mr. Hughes did not dispute that Dupre validly waived UM coverage when it originally secured the policy in October 2005. Mr. Hughes also did not dispute that Dupre validly waived UM coverage in subsequent UM rejection forms on renewal policies dated 10/1/06, 9/28/07, and 8/28/08. Mr. Hughes contended, however, that Dupre did not waive UM coverage on the fourth renewal policy for the policy period from 10/1/09 through 10/1/10 insofar as the representative for Dupre failed to place his initials in the appropriate blank on the form rejecting UM coverage. Mr. Hughes asserted that the representative’s failure to place his initials on the form evidences his intent to secure UM coverage on behalf of Dupre.
. IsAfter taking the matter under advisement, the trial court granted Zurich’s motion, concluding that “the initial rejection of coverage was sufficient to show the intent to reject coverage on the renewal policies.” Mr. Hughes has appealed, asserting that the trial court erred in granting Zurich’s motion for summary judgment.
STANDARD OF REVIEW
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Duncan v. U.S.A.A. Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, 546. Appellate courts review summary judgments de *479 novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Costello v. Hardy, 08-1146 (La.1/21/04), 864 So.2d 129,137. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. See LSA-C.C.P. art. 966(B)(2). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Craig v. Bantek West, Inc., 04-0229 (La.App. 1 Cir. 9/17/04), 885 So.2d 1241, 1245.
DISCUSSION
Louisiana Revised Statutes 22:1295 (formerly 22:680) addresses UM coverage in Louisiana and the statute is to be liberally construed. Duncan, 950 So.2d at 547. Given the liberal construction, any statutory exceptions to coverage must be strictly interpreted. Id. Insurers in Louisiana are required to include UM coverage unless specifically rejected by the insured. Dyess v. American National Property and Cas. Co., 08-1971 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, 453, writ denied, 04-1858 (La.10/29/04), 885 So.2d 592. It is the rejection of UM coverage, and not its acceptance, that must be the | ^affirmative act of the insured. Dyess, 886 So.2d at 453. Unless the insured’s expression of his desire to reject or select lower limits of UM coverage meets the formal requirements of law, the expression does not constitute a valid rejection. Id.
The parties do not dispute that Dupre validly rejected UM coverage on the prescribed form when it first acquired its liability policy in 2005.[1] Once coverage was validly rejected on the prescribed form, it remains “valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates.” LSA-R.S. 22:1295(l)(a)(ii) (formerly 22:680(l)(a)(ii)). “Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new insurance motbrist selection forms.” LSA-R.S. 22:1295(l)(a)(ii) (formerly ,22:680(l)(a)(ii)).
Although there was no legal requirement that new selection forms be completed, Zurich had a representative for Dupre sign the prescribed form each year on its renewal policies. On the fourth renewal, which covered the policy period in effect at the time of the accident, the UM waiver form did not meet all the requisite requirements for a valid waiver insofar as Dupre’s representative did not reject UM coverage by initialing in the appropriate blank on the form.
Mr. Hughes notes that Dupre was not obligated to execute a new ÚM coverage *480 forra unless the insured wanted to change the original UM motorist selection or rejection. Mr. Hughes contends that because Dupre signed the form without rejecting UM coverage, it evidenced Dupre’s intent to secure such coverage. Mr. Hughes concludes that absent an express, affirmative act on the Rpart of Dupre which clearly, unmistakably, and unambiguously rejected UM coverage, such coverage must be read into the liability policy.
In this regard, we find McElroy v. Continental Cas. Co., 43,868 (La.App. 2 Cir. 6/24/09), 15 So.3d 377, to be instructive. Therein, the plaintiff, who was injured in an accident while driving his employer’s vehicle, sought UM recovery from his employer’s business auto coverage insurer. The employer had executed a valid UM rejection form when it initially secured the policy. The employer attempted to reject UM coverage for the next policy year when the policy was renewed, but the rejection was ineffective because the employer’s representative did not initial the UM rejection selection on the form. Instead, the representative circled the number next to the selection. McElroy, 15 So.3d at 379. The second circuit noted that because the second policy was a renewal, a new form rejecting UM coverage was not required to be executed. Id. at 381. Because the employer “attempted to execute a new form rejecting UM coverage with the renewal policy does not serve to make the earlier UM rejection ineffective, or make the later form supersede the earlier form.” Id. The appellate court further noted that the initial form, similar to the form signed by Dupre in this case, clearly stated that the employer could change its mind to accept UM coverage by making “a written request for a change,” and the submission of the latter form was not a written request for a change in UM coverage. Id. Accordingly, the appellate court granted summary judgment in favor of the insurer, concluding that its policy did not provide UM coverage. See also Doyle v. Allstate Ins. Co., 10-1020 (La.App. 3 Cir. 3/2/11), 58 So.3d 606, writ denied, 11-0677 (La.5/20/11), 63 So.3d 980 (failure to include company name and policy number in a renewal policy does not invalidate prior valid UM waiver); Rashall v. Pennington, 08-0001 (La.App. 3 Cir. 4/30/08), 982 So.2d 301, 305, writ denied, 08-1543 (La.10/10/08), 993 So.2d 1286 (failure to date the waiver form in a renewal policy did not invalidate a prior valid UM waiver) and LeBlanc v. Guntenaar, 07-904 (La.App. 5 Cir. 3/25/08), 984 So.2d 136, writ denied, 08-0841 (La.6/6/08), 983 So.2d 923 (placing an “x” to reject | ^coverage rather than initialing the selection in a renewal policy did not invalidate prior valid UM waiver).
In this case, Dupre validly rejected UM coverage in the trucker’s liability insurance policy. The simple fact that Dupre attempted to execute a new UM rejection form with the fourth renewal policy does not serve to make the earlier UM rejection ineffective, or make the later form supersede the earlier form. See LSA-R.S. 22:1295(l)(a)(ii) and McElroy, 15 So.3d at 381. Like the form in McElroy, the initial UM waiver form, which the parties do not dispute was valid, states:
The choice I made by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.
Since there was no requirement that Dupre execute a new UM rejection form for the policy period at issue, we cannot find that the failure to initial said form *481 equates to a selection of UM coverage by Dupre. Accordingly, we conclude that the trial court did not err in granting summary judgment.[2]
CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Zurich is affirmed. Costs of this appeal are assessed to appellant, Lloyd Hughes.
AFFIRMED.
PETTIGREW, J., dissents, and assigns reasons.

. Rejection of coverage shall be made on a form prescribed by the commissioner of insurance. LSA-R.S. 22:1295(l)(a)(ii) (formerly 22:680(l)(a)(ii)). A properly completed UM rejection form must meet six requirements: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy are chosen, then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) Filling in the policy numbers; and (6) filling in the date. Duncan, 950 So.2d at 551.

. In reaching this conclusion on our de novo review, we have not relied upon the three affidavits offered by Zurich. As such, we pre-termit discussion of whether the trial court .should have granted Mr. Hughes's motion to strike the affidavits.